UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

NANCY HALL-DUBOIS                    :
                                     :
         v.                          :        C.A. No. 06-512A
                                     :
MICHAEL J. ASTRUE,                   :
Commissioner of the Social Security  :
Administration                       :

**MEMORANDUM AND ORDER**

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"), 42 U.S.C. § 405(g).  Plaintiff filed her Complaint on October 26, 2005 in the United States District Court, District of Massachusetts.  On November 7, 2006, an Order was entered by District Judge Nathaniel M. Gorton granting a joint Motion to Change Venue to this Court.  Plaintiff is seeking to reverse the decision of the Commissioner or, in the alternative, to remand for further proceedings.  On July 23, 2007, Plaintiff filed a Motion for Summary Judgment seeking such relief.  (Document No. 15).  On September 19, 2007, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 18).

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  Based upon my review of the record and the legal memoranda filed by the parties, I find that there is substantial evidence in the record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act.  Consequently, I order that the Commissioner's Motion for

an Order Affirming the Decision of the Commissioner (Document No. 18) be GRANTED and that

Plaintiff's Motion for Summary Judgment (Document No. 15) be DENIED.

## I.      PROCEDURAL HISTORY

Plaintiff filed an application for DIB on August 28, 2002 alleging disability as of February

1996.  (Tr. 16, 48-50, 443).[1]  Plaintiff's date last insured was December 31, 1998.  (Tr. 22, 51-52,

443).[2]  The application was denied initially (Tr. 20, 22-24) and on reconsideration.  (Tr. 21, 26-28).

Plaintiff requested a hearing (Tr. 29), and on April 7, 2005, a hearing was held before

Administrative Law Judge V. Paul McGinn (the "ALJ"), at which Plaintiff, represented by counsel,

a vocational expert and a medical expert appeared and testified.  (Tr. 441-460).  On June 2, 2005,

the ALJ issued a decision finding that Plaintiff was not disabled because she failed to demonstrate

that she suffered from a severe impairment at any time prior to her date last insured, December 31,

1998.  (Tr. 16-19).  The Appeals Council denied Plaintiff's request for review on August 26, 2005,

(Tr. 8-10), rendering the ALJ's decision the final decision of the Commissioner, subject to judicial

review.

## II.     THE PARTIES' POSITIONS

Plaintiff's primary argument is that the ALJ erred in evaluating the severity of her

impairments and denying her claim at Step 2.  Plaintiff also argues that the ALJ failed to properly

analyze Plaintiff's allegations of pain pursuant to the <u>Avery</u> requirements.

---

[1] At the ALJ hearing, Plaintiff amended her disability onset date from March 1, 1991 (Tr. 48) to February 1996. (Tr. 443). The ALJ noted, however, that Plaintiff's amended onset date was March 1, 1996 and then later noted that the onset date was December 1996. (Tr. 16-17). Plaintiff noted March 1, 1996 as the onset date in her brief. Document No. 15 at p. 5. Any error in noting the proper onset date by the ALJ was harmless error because there is nothing in the record to indicate disability at any time prior to Plaintiff's date last insured.

[2] Because Plaintiff acquired sufficient quarters of coverage to remain insured for DIB only through December 31, 1998 (Tr. 22, 51-52, 443), she had the burden to show that she was disabled on or before that date in order to establish disability for DIB purposes. <u>See</u> 20 C.F.R. §§ 404.101, 404.130-404.131.

The Commissioner disputes Plaintiff's claims and argues that there is substantial evidence of record to support the Commissioner's decision that Plaintiff was not entitled to DIB.

## III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (*per curiam*); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (*per curiam*); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence

establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  Seavey, 276 F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision.  Freeman v. Barnhart, 274 F.3d 606, 609-10 (1st Cir. 2001).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council).  After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction.  Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there

is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-92 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Jackson, 99 F.3d at 1095.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id.  The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.   DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.   Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may

-5-

discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-76 (1ˢᵗ Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11ᵗʰ Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1ˢᵗ Cir. 1987).

## B.      Developing the Record

The ALJ has a duty to fully and fairly develop the record.   Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

## C.      Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

## D.      The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not

disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c).  If a claimant

becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

**E.      Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-

exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1. Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

## 2.    Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.    APPLICATION AND ANALYSIS

Plaintiff was fifty-three years old at the time of the ALJ hearing (Tr. 16, 48) and forty-six years old on her date last insured.  (Id.)  Plaintiff completed high school and one year of college (Tr. 60) and previously worked as a stable hand, steel mill clerk/secretary, animal hospital worker and sales clerk.  (Tr. 83-85).  Plaintiff represents that she has not worked since 1998.  (Tr. 52, 445).  Plaintiff alleges disability due to lyme disease, fibromyalgia, asthma, cartilage loss in knees, old back injury, memory loss, chronic spasms, tendinitis, osteoarthritis, degenerative disc disease, chronic fatigue and depression.  (Tr. 54).

-11-

Plaintiff was seen at NHCC Medical Associates ("NHCC") in July 1996.  (Tr. 280).  She complained of fatigue, neck pain and joint pain.  Id.  Plaintiff was prescribed pain medication and was subsequently prescribed Paxil.  (Tr. 280-281).  Plaintiff next visited NHCC in October 1996.  (Tr. 283).  She complained of continued joint pain and fatigue, but noted that she was feeling much better and she had a job.  Id.  At that time, Plaintiff was tested for lyme disease and Crohn's disease, but the results were inconclusive.   (Tr. 284-287).   Plaintiff also underwent an upper GIH examination which revealed only a mildly dilated small bowel of unknown etiology with no other definite abnormalities.  (Tr. 287).  In November 1996, Plaintiff complained of heartburn, diarrhea with bowel pain, night sweats, joint pain and sleep disturbance.  (Tr. 288).  Plaintiff was assessed with a history of fibromyalgia, irritable bowel and osteoarthritis.  (Tr. 289).  She was also assessed with acute diarrhea, diffuse joint pain, GERD and sleep problems.  Id.  In December 1996, Plaintiff still complained of fatigue and muscle pain but her other issues were resolved.  (Tr. 291).  She was referred to a rheumatologist for a second opinion.  Id.

In January 1997, Plaintiff visited Dr. Ronald J. Rapoport, a Rheumatologist, who noted the presence of fourteen of sixteen tender points on examination with no evidence of synovitis. (Tr. 108).  He assessed fibromyalgia and recommended she consider lifestyle changes, increasing her dosage of Paxil and undergoing trigger point injections.  Id.  By March 1997, Dr. Rapoport indicated that Plaintiff reported that the Paxil "has helped" and her activity increased, and that Plaintiff's fibromyalgia was doing relatively well.  Id.

In April 1997, Plaintiff reported that she pulled a muscle in her back, and she complained of chest congestion.  (Tr. 294).  She was prescribed pain and sleep medication.  (Tr. 295-297).  In August 1997, Plaintiff reported that her fibromyalgia was much better, and her doctor noted that it

-12-

was stable with current treatment.  (Tr. 298).  Plaintiff also was treated for seasonal allergies, GERD, a tick bite and heel pain.  Id.  In October 1997, Plaintiff complained of right arm pain, numbness in her arms and difficulty sleeping.  (Tr. 299).  In November and December 1997, Plaintiff was treated for sinusitis and bronchitis.  (Tr. 301-302).

Plaintiff returned to NHCC in April 1998 at which time she complained of right hand pain due to a cat bite.  (Tr. 307).  In May 1998, she complained of right foot pain after it was stepped on by a horse.  (Tr. 310).  Plaintiff reported depression and was given Effexor XL.  Id.  Plaintiff visited NHCC in September 1998 and complained of a left ankle injury and right leg pain after she fell in a hole at work.  (Tr. 313).  She was given refills of Paxil, Zantac, Ambien and Flexeril up through her date last insured.  (Tr. 314-315).  There are no further medical records in the administrative record concerning the time period at issue in this matter, i.e., Plaintiff's disability status on or before December 31, 1998.

Plaintiff testified that she lived with her husband and last worked in the Fall of 1998.  (Tr. 444-445, 448).  Plaintiff stated, however, that she became unable to work in 1996 due to physical problems with her back pain and knee pain which was severe and constant.  (Tr. 445-446).  She also stated that she had joint pain, arthritis pain, asthma and depression.  (Tr. 446-447).  Plaintiff stated that she could walk for fifteen to twenty minutes, stand for twenty minutes and sit indefinitely.  (Tr. 447).  Plaintiff noted that while she was able to do much less at the current time, back in 1998 she was able to do more, and she worked a "little under the table."  Id.  Plaintiff testified that she was sleeping a lot in 1998 and crying on a daily basis.  (Tr. 449).  She testified that she had to lie down throughout the day, as her fibromyalgia caused "chronic fatigue."  (Tr. 450).  She testified that she stayed in bed five or six days in the average week after she stopped working in 1998.  (Tr. 451).

-13-

Plaintiff testified, however, that in 1998 she was able to make supper, do the laundry and vacuum.
Id.

Dr. John Pella, the Medical Expert, testified that the medical record from the relevant time
period, prior to December 1998, was quite limited.  (Tr. 453).  He noted that there were problems
with myalgias and paralysis.  Id.  He also noted that the question of fibromyalgia was raised.  Id.
He noted that there may have been a sleep disorder, but this was not diagnosed.  (Tr. 454).  Dr. Pella
also noted that Plaintiff had a history of back pain and malignant melanoma, which was removed.
Id.  He noted that she appeared to have asthma but her function test was normal.  Id.  Dr. Pella
further testified that there were some psychiatric problems which required anti-depressants.  Id.  He
concluded that Plaintiff's diagnoses at the end of 1998 were possibly fibromyalgia and psychiatric
illness.  Id.  Dr. Pella noted that, while the symptoms were specific enough to impress upon
Plaintiff's physician the diagnoses of fibromyalgia and depression, he did not believe there was
enough specificity in the record for him to conclude that the symptoms were consistent with the
diagnoses.  (Tr. 455).

### A.      Substantial Evidence Supports the ALJ's Non-disability Finding

It is undisputed that Plaintiff had to establish disability on or before December 31, 1998, as
her insured status for DIB expired at that time.  (Tr. 443).  Plaintiff also amended her disability onset
date from 1991 to 1996.  Id.  Despite this amendment, the ALJ found that the medical evidence for
the relevant period was "sparse" and that the record demonstrates that Plaintiff "was active during
the time she alleged to be disabled."  (Tr. 17-18).  The Medical Expert also testified that the medical
record is "quite limited" for the relevant period.  (Tr. 453).  The ALJ thus concluded at Step 2 that

Plaintiff was not suffering a "severe" impairment at any time prior to December 31, 1998 and was not under a disability at the relevant time.  (Tr. 18, Findings 4 and 5).

From the medical records, it is apparent that Plaintiff's medical problems have worsened over time.  She may well be presently disabled for purposes other than DIB.  In fact, when questioning the Medical Expert, the ALJ advised him that Plaintiff is "very disabled, in 2002, 2003, and 2004" but that "the important date here, is 12/98."  (Tr. 453).  Unfortunately, it is apparent that Plaintiff is seeking to fit a square peg into a round hole.  She filed her DIB application in 2002 but she was not insured for DIB after 1998.  Thus, she had to prove disability status prior to 1999 but, as noted by the ALJ, her medical evidence is "sparse" at best for that period.

In her brief, Plaintiff's counsel indicates that Plaintiff testified that "she last worked in 1998 on a limited basis (two to three hours daily) and felt that she had been unable to work since 1996." (Document No. 15-1 at 5).  Plaintiff had no reported earnings after 1998 (Tr. 52) but did make an unsolicited reference at the ALJ hearing to "under the table" work.  (Tr. 447).  Plaintiff clearly testified that she has not worked since 1998.  Id.  However, the medical records for 1999 and 2000 are replete with references to Plaintiff working and engaging in strenuous activity.  For instance, on March 23, 1999, Plaintiff's physician indicated that Plaintiff reported "not sleeping well" and "working hard at work."  (Tr. 318).  On April 14, 1999, Plaintiff reported that she was "unable to work this week."  (Tr. 320).  On July 8, 1999, Plaintiff went to see her physician about a rash and indicated that she "works with horses."  (Tr. 324).  On July 22, 1999, Plaintiff was seen for an injured finger and reported she "hit finger while working with horses."  (Tr. 325).  On December 9, 1999, Plaintiff reported that "work is tough on [her] knees, leg," (Tr. 336), and that she "works in barn with animals/horses."  (Tr. 337).  On December 13, 1999, Plaintiff reported that she has a

-15-

knee brace and "will try to work" one day in that week.  Id.  On August 15, 2000, Plaintiff was seen

for an eye injury and reported she had been "weed whacking brush." (Tr. 349).  On March 1, 2000,

Plaintiff reported that she "had continued to be active, taking care of her horses." (Tr. 432).  On

March 14, 2000, Plaintiff reported improvement in her knee after receiving an injection but her

orthopedist "talked [to Plaintiff] about her activity level in that being strenuous with leading the

horses may accelerate her arthritic problems." Id.  Finally, on February 1, 2000, Plaintiff reported

that "her job involves cleaning out a barn and working with horses.  That requires her to do a lot of

heavy lifting, climbing, and rather strenuous activity." (Tr. 431).

Plaintiff bore the burden at Step 2 to prove that she suffered a severe impairment.  An

impairment is considered "severe" if it "significantly limits [the] physical or mental ability to do

basic work activities." 20 C.F.R. § 404.1520(c).  In addition to the evidence of post-1998 work by

Plaintiff, the medical record is "sparse" as to Plaintiff's work limitations between her alleged

disability onset date (February 1996) and the expiration of insured status (December 1998).  Further,

it is undisputed that Plaintiff worked part-time in 1997 and 1998 (Tr. 52) and, as summarized above,

there is evidence of work activity in 1999 and 2000.  Thus, there is more than ample evidence in the

record to support the ALJ's conclusion that Plaintiff "was active during the time she alleged to be

disabled" and did not establish the existence of a "severe impairment." (Tr. 18).

As to Plaintiff's alleged mental impairment, the ALJ found no evidence of treatment for

depression during the relevant period and was unable to find any "severe" mental impairment.  This

finding is also supported by substantial evidence.  Dr. Clifford, a nonexamining consultant, reviewed

Plaintiff's medical records and found no evidence of psychiatric issues prior to August 2001. (Tr.

151).  Similarly, Dr. E. Lynch found "insufficient evidence" of a psychiatric impairment prior to

1999.  (Tr. 226-240).  In 2003, Plaintiff began treating with Dr. Claude A. Curran, a Psychiatrist, but he offered no opinion as to Plaintiff's psychiatric condition prior to 1999.  (Tr. 380-386). Plaintiff's attorney referred Plaintiff to Dr. John Parsons for an evaluation on March 29, 2005.  (Tr. 410).  Dr. Parsons concluded that Plaintiff "is totally disabled from a psychological perspective and therefore unemployable."  (Tr. 417).  Dr. Parsons noted that Plaintiff had no history of hospitalization for psychiatric reasons and that she saw Dr. Louis A. Cerbo in February 2003 and was seeing Dr. Curran.  (Tr. 413).  There is no record of any treatment by a psychiatrist or other mental health professional in the relevant time period, i.e., 1996 to 1998.  Despite the fact that Dr. Parsons described Plaintiff as an "extremely poor historian" and reviewed limited records, Dr. Parsons was able to opine (Tr. 421) that Plaintiff's present severe mental impairments were present at the same level of severity seven years earlier in 1998.  See Evangelista, 826 F.2d at 140 n.3 (consulting physician's "ability to shed light on [disability] issue was seriously curtailed because he never examined the plaintiff until some four and one-half years later").  However, Dr. Parsons never treated Plaintiff prior to 1999, or ever, for that matter, and offered no competent support for his retrospective diagnosis back to 1998.  See Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998) ("A retrospective diagnosis may be considered only if it is corroborated by evidence contemporaneous with the eligible period.").  Since Dr. Parsons' opinion as to Plaintiff's mental condition in 1998 is not properly supported, the ALJ's failure to comment on or credit that opinion is not error.

Plaintiff also takes issue with the lack of detail in the ALJ's decision and his failure to explicitly consider the Avery factors.  Although the ALJ's decision does not contain the customary level of detailed analysis, the fact that it is short and to the point is not a reason for reversal and remand.  This is an extremely weak case, and the ALJ properly disposed of it at Step 2 in a concise

and efficient manner.  Plaintiff's insured status expired in 1998, and, as noted above, her counsel is trying to fit a square peg into a round hole based on the medical evidence of record.  There is also a troubling discrepancy between Plaintiff's testimony that she stopped working in 1998 and the numerous post-1998 references in the medical records to Plaintiff working.  Further, the accuracy of Plaintiff's testimony that, after she stopped working in 1998, she would stay in bed all day long for five or six days each week (Tr. 451) is highly suspect when compared to the level of activity suggested by Plaintiff's 1999-2000 medical records.  Plaintiff's condition may well have worsened over time to the point of current disability.  However, that was not the issue before the ALJ.  The ALJ had to determine disability status prior to 1999, and his non-disability determination in that context is fully supported by the record and entitled to deference.  Plaintiff has shown no error.

## VI.     CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 18) be GRANTED and that Plaintiff's Motion for Summary Judgment (Document No. 15) be DENIED.  Final judgment shall enter in favor of the Commissioner.


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
October 9, 2007